FILED
JUL 2 5 2016
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAURICE ALEXANDER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 15-01140 (RCL) |
| EDGEWOOD MANAGEMENT CORPORATION, *et al.* | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Maurice Alexander, alleges that he was wrongfully denied residence at three apartment buildings. He alleges that the selection policies utilized by the apartment buildings violate 42 U.S.C. §§ 3601 *et seq.*, the District of Columbia Human Rights Act ("DCHRA"), and are a breach of contract as they have a disparate and discriminatory effect on African-American applicants. Moreover, he alleges that he was personally discriminated against based on his race due to the fact that his applications for residence were denied due to a seven-year-old, non-violent, non-drug-related offense.

Edgewood Management, Community Preservation and Development Corporation (CPDC), A&R Management, and East Capitol Senior Rental LP (collectively, "defendants") move to dismiss under Rule 12(b)(6) for failure to state a claim. The Court finds that the plaintiff sufficiently alleged a claim in his Amended Complaint and therefore DENIES the motion.

1

## I. BACKGROUND

The following is alleged in the amended complaint. Defendants own, operate, and manage residential properties in the District of Columbia, including The View, Capitol Gateway, and The Overlook. The View is owned and operated by CPDC and managed by Edgewood Management, as is The Overlook. Capitol Gateway is owned and operated by East Capitol and managed by A&R Management. The Defendants also have contractual agreements with the District of Columbia House Authority (DCHA) governing the selection of prospective tenants. Additionally, the DCHA reviews applications for subsidized housing and refers eligible applicants to subsidized housing providers, such as the Defendants.

Defendants are owners, operators, or managers of federally assisted housing, and as such are required to comply with the procedures and requirements established under the Fair Housing Act (FHA). 42 U.S.C. §§ 13601 *et seq.* One such regulation is a requirement that assisted housing providers adopt a written tenant selection plan ("TSP") that complies with federal requirements. 24 C.F.R. §§ 5.655(a), (b)(2). Among these requirements is a federal law that authorizes public and assisted housing providers to deny an applicant admission to the subsidized housing based on certain criminal backgrounds. 42 U.S.C. § 13661(c).

Mr. Alexander is an African-American resident of the District of Columbia. In 2007, Mr. Alexander was convicted of a misdemeanor and served a ten-day jail sentence. The DCHA later evaluated Mr. Alexander's application for eligibility for assisted housing and did not reject him based on his misdemeanor or on any other grounds.

The DCHA initially referred Mr. Alexander to each of the rental properties in this case. He submitted applications to and was denied residence by each property. Mr. Alexander's application to The View was denied due to an "unsatisfactory" criminal history and a fraud alert, according to

the letter Mr. Alexander received. His applications to Capitol Gateway and The Overlook were rejected for similar reasons. Mr. Alexander attempted, with the aid of counsel, to appeal or otherwise follow up on each denial but was unsuccessful. He alleges defendants denied each application because of his 2007 misdemeanor. Am. Complaint ¶ 1, ECF No. 10.

Mr. Alexander argues that his rights were violated by the Defendants' refusals to accept his applications and failure to respond to his appeals. He contends that their policies and practices as they were applied do not conform to federal law in that they exceed the scope of § 13661(c) and have a discriminatory effect on African Americans eligible for assisted housing because a disproportionate number of individuals arrested, convicted, and incarcerated in the District of Columbia are African American. Plaintiff cites data from the D.C. Sentencing and Criminal Code Revision Commission and from the Bureau of Justice Statistics to support his claim that African-Americans are overrepresented in prisons and jails.

Defendants moved to dismiss for failure to state a claim, arguing the complaint "lacks any facts showing that the tenant selection policy disproportionately affected African Americans" and that Mr. Alexander's "general population statistics" are insufficient as a matter of law. A&R Mot. Dismiss 1, ECF No. 17.

In their reply brief, the View and the Overlook claim Mr. Alexander was not in fact denied because of his 2007 misdemeanor conviction. Rather, they argue it was "based exclusively on multiple 1991 felonies that included weapons and violence-related crimes." Mem. P. & A. Reply Pl.'s Opp'n Mot. Dismiss 2, ECF No. 27. Only Capitol Gateway appears to have denied Mr. Alexander's application based on the '07 misdemeanor. *See* Am. Complaint ¶ 29; Reply Mem. Supp. Mot. Dismiss 9-10, ECF No. 26. Notably, Mr. Alexander claims his convictions for the "multiple 1991 felonies" were overturned on appeal. Notice Supp. Authority 1, ECF No. 28.

The crux of the motion to dismiss is defendants' argument regarding Mr. Alexander's statistical basis for disparate impact. Defendants argue that Mr. Alexander is required to show a disparate effect, that is, that the policy in question actually had a "disproportionately adverse effect on a protected class of people." *Onyewuchi v. Mayorkas*, 766 F. Supp. 2d 115, 130 (D.D.C. 2011); Mem. Supp. A&R Mot. Dismiss 4-5, ECF No. 17-1; Def. Edgewood Mot. Dismiss 2-3, ECF No. 21. Here, it is undisputed Mr. Alexander's statistics do not speak to the demographic profile of the buildings residents. Defendant A&R Management explicitly argues this is dispositive as its population is 100% African American.[1] Mem. Supp. A&R Mot. Dismiss 7 n.1.

## II. LEGAL STANDARDS

Under Rule 12(b)(6), a plaintiff must only plead facts sufficient to "nudge[] [his or her] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Stated another way, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all factual allegations contained in the complaint and construe the complaint liberally in the plaintiff's favor, granting the plaintiff the benefit of all reasonable inferences that can be derived. *Boykin v. Gray*, 895 F. Supp. 2d 199, 205 (D.D.C. 2012).

A plaintiff may bring disparate-impact claims under the Fair Housing Act (FHA). *Tex. Dep't of Hous. & Community. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015). Guidance from the Department of Housing and Urban Development (HUD) explicitly covers disparate impact claims relating to criminal history policies. Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related

---

[1] The View and Overlook also claim their tenants are predominantly African American. Declaration of Ethel Couser ¶ 3, ECF No. 27-2; Declaration of Desiree Taylor ¶ 3, ECF No. 27-3.

Transactions (the "HUD Guidance"), ECF No. 33-1. However, in reviewing such claims "[c]ourts should avoid interpreting disparate-impact liability to be so expansive as to inject racial considerations into every housing decision." *Inclusive Communities*, 135 S. Ct. at 2524. Among other things, this means "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Id.* at 2523.

42 U.S.C. § 13661 allows for defendants to deny admission on the basis of certain prior criminal activity. The pertinent provision, § 13661(c), allows for denial of an application if "during a reasonable time preceding the date when the applicant household would otherwise be selected for admission, [the applicant] engaged in any drug-related or violent criminal activity or other criminal activity which would adversely affect the health, safety, or right to peaceful enjoyment of the premises by other residents."[2] However, this is still subject to claims of disparate impact.[3] *See* HUD Guidance III(B), Evaluating Whether the Challenged Policy or Practice is Necessary to Achieve a Substantial, Legitimate, Nondiscriminatory Interest.

In looking at disparate impact claims, courts have held that it is improper to simply look to the "bottom line" for a class of persons as the goal is protection of individuals, not just minority groups as a whole. *Connecticut v. Teal*, 457 U.S. 440, 453-54 (1982); *see also Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579 (1978) ("A racially balanced work force cannot immunize an employer from liability for specific acts of discrimination."). While *Teal* and its progeny are derived from cases brought under Title VII, Title VIII is analogous. *Betsey v. Turtle Creek Associates*, 736 F.2d 983, 987 (4th Cir. 1984) ("In order to prevail in a discriminatory impact case under Title VIII, plaintiffs, members of a discrete minority, are required to prove only that a given

---

[2] Sections (a) and (b) address ineligibility because of prior evictions for drug crimes and ineligibility for use of controlled substances or abuse of alcohol.
[3] 42 U.S.C. § 3607(b)(4) creates a statutory exemption for individuals convicted of drug manufacturing or distribution.

policy had a discriminatory impact on them as *individuals*. The plain language of the statute makes it unlawful '[t]o discriminate against *any person*.' Title VII cases construing almost identical language have resolved this question beyond serious dispute." (citations omitted)); *See also Bronson v. Crestwood Lake Section 1 Holding Corp.*, 724 F. Supp. 148, 155 (S.D.N.Y. 1989); *Fair Hous. Ctr. of Washtenaw County v. Town & Country Apts.*, 2009 U.S. Dist. LEXIS 25705, *18 (E.D. Mich. Feb. 27, 2009).

### III. ANALYSIS

Mr. Alexander has pled sufficient facts to state a claim. Specifically, he has both identified the specific policy—the tenant selection plan—at issue and alleges, based on his understanding of the policy and the statistics he has provided, that it has a disparate impact on a protected class. In brief, Mr. Alexander alleges that defendants are—contrary to their written TSPs and § 13661(c)—rejecting applicants on a very broad basis associated with criminal history. He provides statistics showing that due to incarceration rates in the area, this will lead to a disparate number of African Americans being rejected. Defendant's primary arguments against this will be addressed in turn.

First, defendants argue that there can be no disparate impact on African Americans because the population of the housing communities are overwhelmingly or exclusively African American. Mem. Supp. A&R Mot. Dismiss 7 n.1. This runs counter to the holding in *Teal* and *Betsey v. Turtle Creek Associates*. In *Betsey v. Turtle Creek Associates* for example, the court held that an apartment complex's policy could have a disparate impact even when the percentage of minorities in the complex exceeded that of the surrounding area by a "substantial margin." 736 F.2d at 987. The logic of the "bottom line" argument is pernicious. If the Court were to find there could be no disparate impact as a matter of law so long as defendants could show a sufficient baseline, it could justify discrimination against some portions of a class so long as other members were treated

favorably. *See Teal* at 455 ("Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group.").

Second, defendants argue that Mr. Alexander's statistics are improper as they are (a) for the entire Washington D.C. metropolitan area and (b) from before 2014. Mem. Supp. A&R Mot. Dismiss 8. It is not clear what defendants believe could be adequate. Mr. Alexander is alleging that defendants' TSP is improper or they operate outside its bounds, *see* Am. Complaint ¶¶ 61, 91, in part because they are not using a "reasonable time" when reviewing criminal history, *Id.* at 40. Accordingly, it makes sense provide statistics for the 1990s and 2000s, as Mr. Alexander is alleging that defendants are looking at criminal histories from those years. Moreover, *defendants are indeed looking to those years and denied his application because of criminal activity from that precise timeframe.* Additionally, it is not clear what geographic statistics defendants believe would be superior to that from the Washington DC metropolitan area, where the complaint alleges these properties are located. Had plaintiff provided statistics from only certain wards of DC, it could have been argued the statistics were vastly under-inclusive. It is certainly true there may be better or more precise statistics, but it is also true that there is a limit on what plaintiff can reasonably be expected to provide before discovery.

Accepting all factual allegations as true and granting the plaintiff the benefit of all reasonable inferences, Mr. Alexander articulates the following: DCHA reviewed Mr. Alexander's application and did not reject it on any grounds. The View and The Overlook rejected his application exclusively on the basis of later-overturned 1991 convictions. Capitol Gateway rejected him exclusively on the basis of a 2007 misdemeanor. No rejection was within the scope of the building's TSP, which excludes applicants based on crimes within the past three years for

The View and The Overlook or the past ten years for Capitol Gateway. Thus defendants are using a selection mechanism outside of their published TSP that excludes applicants for a wide range of criminal activity, ranging from old overturned convictions to misdemeanors. Given the demographics in the area and historical conviction rates, African Americans are statistically more likely to fall into that category and thus be excluded by defendants' unpublished policy. Moreover, such a broad policy may explicitly run afoul of the law as articulated in recent HUD guidance. HUD Guidance at 6.

### IV. CONCLUSION

Mr. Alexander may or may not succeed in this case, but the issue before the Court is not the merits of Mr. Alexander's claim, it is whether he has stated one. Whether Mr. Alexander's application was denied because of an overturned 1991 conviction or a 2007 misdemeanor, he has alleged a plausible claim that such policies exceed the bounds of the law and may have a disparate impact on African Americans. Defendants have argued that Mr. Alexander's claims under DCHRA are analogous to those under the FHA. A&R Mot. Dismiss 11-12; Edgewood Mot. Dismiss 3-4. Therefore, in light of the entire record of this case, including the amended complaint, briefings, and supplemental authority filed in this matter, the Court finds that Mr. Alexander has properly stated a claim. The motion to dismiss is therefore **DENIED**. A separate order consistent with this opinion will be filed on this date.

Signed this 22nd day of July, 2016.

_____
ROYCE C. LAMBERTH
United States District Judge